GEORGIA,
Chatham Co.
SEPT. 1805.

*Chambers, 3d September,* 1805.

Ex parte Roe.

WALTER ROE *vs.* The MAYOR and ALDERMEN of the city of
Savannah.

*Jones,* Judge :—

The objections and arguments that have been urged
against granting a certiorari, are,

1. That the judge of the Superior Court has no power to
make an order to suspend the proceedings of the corpora-
tion ; or in other words, that the Superior Court has no ju-
risdiction over the city of Savannah.

2. That the law is conditional.

3. That the court has not the power to decide whether
the law be constitutional or not.

4. That the facts upon which the fine was imposed, can-
not be examined under a certiorari, or any other process to
review or control the proceedings of the corporation.

As to the first,—In considering it, it would only be neces-
ry to resort to the constitution of the state to demonstrate the
right of this court. But the question is not a new one, it has
often been decided in England, and in the United States, and in
our own courts the precedents are numerous. I shall cite
but a few of them, and first, the case of Rex *vs.* Conle. 2
Burr. 834, on a rule to show cause why a supersedeas should
not issue to a certiorari, directed to the mayor and corpora-
tion justices of Berwick to remove an indictment for an ar-
rest ; "and also on the adverse party's showing cause at the
same time, against other cross rules, for attachment against
the justices to whom the said certiorari was directed, for re-
fusing to receive or return the said certiorari," and for com-
mitting the defendant to prison on his refusal to plead to their
court of sessions and jail delivery, *after* he had offered his
*certiorari* to them, and tendered sufficient and proper secu-
rity thereupon. "It was insisted by the counsel for the cor-
poration justices, and consequently argued for the supersedeas,

*Rex vs. Conle.*
*2 Burr. 834.*

and against the attachments, that the court have no jurisdiction over Berwick, when the proceedings are not according to the laws of England, but according to a quite different law. Burwick, (535) they say, was formerly a part of Scotland, and was ours only by right of conquest, and remains unincorporated with *England*, and is governed by its own former laws. It is in the very same situation that *Ireland* was immediately after it's being conquered. Vide 8 vol. of State Trials, p. 346. Pryme's argument in lord Maguire's case. A conquered country retains its *own laws* till others are given by the conquerors. No certiorari, therefore, lies to Berwick. The proper method would be to issue a commission to judge according to their own laws. Vide 4 Inst. 286. Lord Mansfield, in delivering the opinion of the court, went into a full examination of the charters of the corporation of Berwick, and then said, " There is no doubt as to the power of this court, where the place is under the subjection of the crown of England, the only question is, as to the *propriety*, 856. There is no one *authority* to the contrary, and in *reason* it would be most absurd ; because it would really be putting the place out of the protection of the law ; and there must be, in many important cases, a little failure of trial, and consequently of justice, 860." Suppose the office of *mayor* should be *usurped*, the usurpation is a crime, and cannot be tried before the man *himself*, who is accused, or any jurisdiction in the *town ;* much less could a question, Whether a corporation was *dissolved*, be tried before *themselves*. Such question could not be tried originally before *commissioners*, sent thither by the king. They could only be judged in this court ; to try franchises of this kind in any *other shape*, would not only be contrary to the common law, but to the act abolishing the star chamber, 16 & 17 Car. 1. c. 10, and all the statutes there recited, 860, 861. Therefore we are all of opinion, that these indictments may be tried in this court by a jury of the county of Northumberland." 861.

To the third objection, admitting that the court have authority, yet there is not *sufficient* ground. We are all of us

GEORGIA,
Chatham Co.
SEPT. 1805.

Ex parte Roe.

8 vol. State
Trials, 346.

GEORGIA,
Chatham Co.
SEPT. 1805.

Ex parte Roe.

2 Burr. 1040,
1041, 1042.

of opinion, that the rule to show cause " why writs of *super-sedeas* to these writs of *certiorari* should not issue," ought to be discharged. 863.

*Secondly,* In the case of Rex *vs.* Mosely et al. 2 Burr. 1040, 1041, 1042, counsel showed cause against the issuing of certiorari to remove several orders made by a justice of the peace in Kent, upon the *conventicle* act, 22 Can. 2. c. 1, by which orders he had convicted a Methodist preacher and others in the respective penalties, following : The penalty had been levied upon *Osborne,* the master of the house. They had all appealed, within the week, to the sessions, and the justice had returned to the session the monies levied, and certified the evidence with the record of the conviction, agreeable to the directions of the 6th section ; and the defendants had pleaded, and been tried by a jury at the quarter sessions, and there had been both verdict and judgment given against them. The counsel for the prosecution urged, that after all this had passed a writ of error might lie, but not a certiorari, which will only lie when there is no other remedy. And there is a clause in the 6th section, which is express : that no other court whatsoever shall intermeddle with any cause or causes of appeal upon this act ; but they shall be *finally* determined in the quarter sessions only ; which negative words must include all the courts of judicature in the kingdom, and this court in particular, as being most likely to meddle with matters of this kind. Therefore, to what purpose shall a certiorari issue, when the court can neither intermeddle with the fact or form. The penalties are, by the second section, to be distributed into three parts, one third to the king, one third to the poor, and one third to the informer ; and these penalties have been so distributed, and this court cannot order restitution.

The counsel had affidavits of the facts which they alleged. The court were unanimously of opinion, that a certiorari ought to issue. A certiorari does not go to try the merits of the question, but to see whether the limited jurisdiction have exceeded their bounds. The jurisdiction of this court is not

taken away, unless there be express words to take it away ; this is a point settled. Therefore a certiorari ought to issue, and after a return shall be made to it, you will be at liberty, and it will be open to you to move to supercede it, if there should appear reason for the court's so doing. Rule made absolute for a certiorari. These cases from the English authorities I deem sufficient for my purpose. The decisions in the courts of our sister states, if not authority, at least may be considered in argument. I shall take the liberty to cite a case from a work of great merit, in South Carolina, viz.

GEORGIA,
Chatham Co.
SEPT. 1805.

Ex parte Roe.

Geter *vs.* The Commissioners for Tobacco Inspection at Campelton warehouse, upon an application for a mandamus to restore him to his office as inspector of tobacco ; he having been, as alleged, improperly displaced by the commissioners. On the return of the rule for the commissioners to show cause why a mandamus should not issue to them, to restore the applicant to his office, *Goodwin* appeared on their behalf, and took an exception to the jurisdiction of the court. He alleged, that these commissioners having been appointed to an office unknown to the common law, created by an act of assembly for the purpose of inspecting tobacco ; that they were not amenable to the ordinary tribunals of justice ; that they were nominated by the legislature, and responsible to that body for their acts and proceedings, who alone was capable of removing or punishing them for misbehaviour.

*Ramsay*, in reply, was stopped by *Bay*, justice, who observed, " he would never sit in the court of sessions and suffer its authority, over any of the inferior officers of any department in the state, to be called in question ; that although the office of a commissioner for the inspection of tobacco was an office unknown at common law, yet it was a well known maxim, that whenever an act of parliament creates a new office, unknown before, the moment an officer is appointed to fill the place, that instant he becomes subject to the control of the supreme tribunals of justice ; and if he

GEORGIA,
Chatham Co.
SEPT. 1805.

Ex parte Koe.

misbehaves he is liable to punishment for such misbehaviour; or if he abuses or exceeds his authority, the court of sessions can correct that abuse, and compel the newly created officer to do justice : That it was the province of the legislative branch of the government to make laws and create offices ; but it was the province of the judiciary alone to control them when made, and keep the officers within the bounds of duty when once appointed."

This case was, by consent, ordered to be farther agreed before the judges of Columbia, and a mandamus was ordered to issue.

And now for the precedents in our own courts : The first in order is the case of Hicks quietam *vs.* Cuddy et al. p. 216. 220. Argued on the 24th April, 1794, before judge *Walton* and judge *Stith*, on a conviction for dealing with negroes without a license, and a fine imposed under a provincial statute revived and continued by the legislature after the revolution ; the statute authorised a fine of ten pounds.

" But," said the court, " we say that the magistrate or magistrates might convict and impose a fine not exceeding five pounds, and that after proceedings should be according to former usage ; and the admission of this operation precludes indictment. In saying this we only declare the law of the land."

*Secondly.* The case of Welcher *vs.* Mayor and Aldermen, the 17th April, 1798, before judge *Mitchel*, on a rule to show cause why writs of certiorari should not issue to remove certain proceedings said to be had before the Mayor and Aldermen against the defendant and others. After hearing Mr. *Recorder* against it, and Mr. *Welcher* for the rule, the court are of opinion, that writs may issue in order to remove said proceedings.

*Thirdly.* J. P. Sluyter *vs.* Thomas R. Box, 26th June, 1800, before the same judge. Order on motion to show cause, and all proceedings in the mean time stayed ; and on the 21st of July, a certiorari was granted.

*Fourthly.* The Mayor and Alderman *vs.* Thomas Hogg ;

fined for opposing a city constable, 14th August, 1800. Order to show cause why certiorari should not issue, and in the mean time all proceedings stayed. On the hearing, the recorder did not contend for the right of jurisdiction in the corporation ; but if they had not jurisdiction the certiorari could not be granted, for it was a writ only intended to correct errors in inferior courts having jurisdiction in a cause, cited 3 Blk. 112. Jac. Law Dict. title certiorari.  Mr. *Welcher* contended it was the proper remedy ; cited 1 Bl. Rep. 231, and several cases settled under our practice.  Certiorar[i] granted.

GEORGIA,
Chatham Co.
SEPT. 1805.

Ex parte Roe.

3 Blk. 112. Jac.
L.Dict. tit. Cer-
tiorari.

1 Blk.Rep.231.

*Fifthly.* Stephen Files *vs.* Peter Shick.  Before judge M'Allister.  Chambers, 24th December, 1801.

Judgment in the court of mayor and aldermen on the appeal.

An application by Mr. *Lawson*, for the defendant for a rule to show cause why a certiorari should not issue, granted and ordered, that all proceedings in the mean time be stayed ; and,

*Sixthly.* John Lillibridge *vs.* Mayor and Aldermen of Savannah.  Before judge Bowen.  Chambers, December 9th, 1803. Certiorari.

Rule to be served on the recorder to show cause, why writ of certiorari should not issue to remove proceedings on information against plaintiff for retailing spiritous liquors on the 29th December ; after hearing, ordered that the rule be absolute.  Hence, it appears, upon principles of common law, there is no doubt of the power of the court over the inferior officers in the government, and the precedents in the proceedings of the courts of this state, the propriety of which have never been questioned, must be conclusive.  In the 4th case cited, the question of jurisdiction and the propriety of the writ of certiorari was argued and decided, and in the 5th case a certiorari was granted after the appeal trial, which the statute declares shall be final.  But to conclude, the first section of the 3d article of the constitution removes every possible doubt ; in defining the powers of the supe-

GEORGIA,
Chatham Co.
SEPT. 1805.

Ex parte Roe.

rior courts, it declares, "they shall have power to correct errors in inferior judicatories by writs of *certiorari*, and by the 7th section of said article, the judges of the superior courts, or any one of them, shall have power to issue writs of mandamus, prohibition, fieri facias, and all other writs which may be necessary for carrying their powers fully into effect." As the recorder did yesterday abandon his first ground, I should perhaps have passed it over, or but slightly noticed it, but for the formidable shape which it first assumed, which induced me to take this extensive view of the case. The 4th point has been determined in the examination of the first; and as to the second and third points, they will be noticed in considering the grounds of the application for a certiorari, viz. 1st. That the constitution of the United States and of the state of Georgia, secure to every one the trial by jury. 2d. That no act of the legislature of Georgia can impugn the constitution. 3d. That even should the act of assembly of 1803 be deemed constitutional, yet the conduct of the corporation has been illegal and not conformable to the act of 1793. To constitute a crime or offence, the actor must possess the powers of a free agent.

I shall pass over the first and second grounds as unnecessary in determining upon the application for a writ of certiorari, and proceed to the third ground; in support of this, it is urged by the counsel for the applicant that the corporation

Act, 1793.

have exceeded their bounds, even under the act of 1793; that the act of 1805 is merely an amendment of the act of 1793, (giving to the corporation unusual and unconstitutional power.) That under the act of 1793, before a quarantine can be laid, the place from whence the vessel comes must be infected with a contagious disorder; that neither the plague, or other malignant distemper is said to prevail at Jamaica, from which the applicant came; and that the said corporation have, by their resolution of the 6th May last and other proceedings, acted improperly and illegally.

Upon mature deliberation, I am of opinion that the certiorari ought to issue.

Rule made absolute for a certiorari.

It is therefore ordered that the said *Walter Roe* forthwith give security to prosecute the said writ of certiorari before this court at the next term, and to abide the order of the court in the premises ; and that the former bonds given by him in pursuance of the orders of the chambers be, and the same are, hereby cancelled and annulled.

GEORGIA,
Chatham Co.
JAN. 1806.

*Stites and Leake*, in support of the Rule.

*Mr. Recorder, Whitfield*, against it.